**Marvin and Marie Chamberlin v. Vermont Department of Taxes**

[632 A.2d 1103]

No. 92-360

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed July 30, 1993

Motion for Reargument Denied September 1, 1993

*David M. Sunshine* of *Saxer, Anderson, Wolinsky & Sunshine*, Richmond, for Plaintiffs-Appellees.

*Jeffrey L. Amestoy*, Attorney General, and *Danforth Cardozo, III*, Special Assistant Attorney General, Montpelier, for Defendant-Appellant.

**Dooley, J.** The Vermont Department of Taxes appeals from a judgment that taxpayers substantially conformed to the requirements of the builder's exemption to the land gains tax, see 32 V.S.A. § 10002(f), by preparing a parcel of land for the installation of a modular home by the purchaser of the property. We affirm.

Taxpayers purchased the parcel of land at issue from a seller in a transaction that normally would be subject to a land gains tax of approximately $10,000. Taxpayers claimed exemption from the tax, imposed by 32 V.S.A. § 10001, under what is known as the builder's exemption. This exemption is codified at 32 V.S.A. § 10002(f), and provides:

> Also excluded from the definition of land is any land up to ten acres . . . acquired by a person who will build on that land a house which, by the next succeeding sale, will be the principal residence of the occupant when he purchases from the person who built the house. The person acquiring such land must . . . begin building within one year of date of purchase, complete the building within 2 years . . . and sell it within 3 years, from the date of purchase . . . .

There was no dwelling on the land at the time of the transfer of the land from taxpayers to the subsequent purchaser. Taxpayers, however, had prepared the land for the installation of a modular home by grading the lot, pouring a cement foundation, installing a waste water disposal system, water supply and utility connections, and constructing a driveway. Shortly after the transfer, the purchasers had a modular home placed on the foundation and occupied it as their primary residence.

The evidence before the Tax Commissioner indicated that taxpayers had bought the parcel with the expectation they would build a house on it and sell it and the land to a purchaser who would use it as a primary residence. The prospective purchaser, however, was unable to afford an individually built sin-

gle-family home, and the parties agreed that a prefabricated home would be placed on the property once the site was prepared by taxpayers. After investigation, it was determined that the cost of the home and the land would be significantly higher if taxpayers bought the modular home and resold it to purchasers. As a result, the overall transaction was structured so that the purchasers bought the home directly and had it placed on the site prepared by taxpayers.

In arguing that the builder's exemption does not apply, the department relies on familiar canons of statutory construction. Primarily, it argues that the meaning of § 10002(f) is plain and needs no construction. Specifically, it emphasizes that the statutory wording requires the taxpayer to "build on that land a house" and that taxpayers plainly did not do so in this case. It also points out that tax exemptions must be construed strictly against the taxpayer. See *Kingsland Bay School, Inc. v. Town of Middlebury*, 153 Vt. 201, 206, 569 A.2d 496, 499 (1989).

Ordinarily, these arguments will prevail. The principles on which the department relies, however, are not absolutes. "We ordinarily rely on the plain meaning of the words to construe statutes because we presume that it shows the intent of the Legislature." *State v. Papazoni*, 159 Vt. 578, 580, 622 A.2d 501, 503 (1993). Where such a presumption is doubtful, the "plain" meaning of the words will not necessarily control. *Id.* at 581 n.1, 622 A.2d at 503 n.1. Further, our rule that tax statutes should be strictly construed against the party claiming exemption must be tempered by the paramount concern that statutes be construed "reasonably so as not to defeat their purpose." *In re R.S. Audley, Inc.*, 151 Vt. 513, 516, 562 A.2d 1046, 1049 (1989). "[W]e must presume that no unjust or unreasonable result was intended." *International Business Machs. Corp. v. Department of Taxes*, 133 Vt. 269, 275, 336 A.2d 158, 162 (1975).

Unfortunately, application of tax statutes occasionally involves instances where the literal application of the wording produces an unreasonable result at variance with legislative intent. See, e.g., *Langrock v. Department of Taxes*, 139 Vt. 108, 110, 423 A.2d 838, 839 (1980) (although statute appears to create flat rate, land gains tax calculated using marginal rate to avoid harsh and illogical result); *Wetherbee v. State*, 132 Vt. 165, 315 A.2d 251 (1974). In *Wetherbee*, the department assessed a

property transfer tax on the transfer of real property from individual taxpayers to their closely held family business corporation and again on the transfer back to the individuals from the corporation. The transfers were made as part of a mortgage transaction that allowed taxpayers to obtain a commercial interest rate. The department argued that the mortgage transfer from the corporation to the bank was exempt as a transfer "to secure a debt" but that the other transfers were not covered by any exemption language. This Court rejected the argument:

> [S]uch an approach takes too mechanical a view of the taxing statute. The intention of the legislature as it relates to security transactions is plainly stated. They are exempt from the tax. If the tax is to be enforced according to its substantial import, the tax department must not be confined to labels on transactions.
>
> . . . .
>
> . . . Once the facts establish, in substance, as they do here, that the transaction is to secure a debt, the exemption applies.

*Id.* at 168, 315 A.2d at 253.

██ This case is similar to *Wetherbee*. We must interpret the phrase "who will build on that land a house" in a way that reasonably implements the intent of the Legislature in light of the substance of the taxable event. One of the purposes of the land gains tax is the "deterrence of land speculation." *Andrews v. Lathrop*, 132 Vt. 256, 261, 315 A.2d 860, 863 (1974). The builder's exemption exists because the builder holds title in order to turn the land into residential use as opposed to making a "high-profit, short-term land deal[]." *Langrock*, 139 Vt. at 110, 423 A.2d at 839.

Nothing in this transaction involves land speculation or an intent to evade the tax. The department admits that if taxpayers had bought the modular home and had it installed on the site before the sale occurred, the exemption would apply even though the modular home manufacturer actually built and installed the home. Although the sequence of events is different in this case, the result—a home on the site occupied as a principal residence by the purchaser—is the same. Moreover, the items built by the taxpayer—foundation, waste-water disposal

system, connections for water and utilities and driveway—are the same in either case.

In the context of a modular home, we think there is substantial compliance with the exemption if the taxpayer builds, and sells to the purchaser along with the land, all items necessary for attaching the modular home as long as the home is delivered and occupied by the purchaser as a principal residence within a reasonable time thereafter. Because the evidence establishes that this occurred here, taxpayer was exempt from payment of the land gains tax.

The department also attacks certain findings as not supported by the evidence. These findings are not central to our rationale and therefore are surplusage.

*Affirmed.*

**Allen, C.J.,** dissenting. I dissent. The statute clearly and unambiguously requires that the taxpayer build a house on the land before the land is sold in order to be qualified for the tax exemption. Where the meaning of the statute is plain on its face, the legislative intent will be derived from the statute, and the statute will be enforced according to its terms. See *Burlington Elec. Dep't v. Department of Taxes*, 154 Vt. 332, 335–36, 576 A.2d 450, 452 (1990). The majority now interprets this statute to mean that the taxpayer will be exempt provided some other person builds a house on the land after its sale. The majority justifies this interpretation by claiming that the plain meaning of the statute does not reveal the legislative intent. It cannot seriously be said that there is any doubt about what the Legislature intended—the statute unambiguously requires that taxpayer build a house on the land prior to the transfer. The majority's statutory destruction cannot be justified under the guise of statutory construction.

The majority creates further confusion for the department and taxpayers by holding that there is substantial compliance if, after the sale, the home is "occupied by the purchaser as a principal residence within a reasonable time thereafter." While the opinion earlier states that the purchasers occupied the home "shortly after the transfer," the only evidence in the record on this issue was that the home was installed "soon" after it was

purchased and that the purchaser was to move into it before it was finished. A statute which requires a house to be built before sale is now held to be complied with if the house is built "soon" after the sale.

I would reverse.